UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| STEVE BRESTAN and JAMIE BRESTAN, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) Case No. 07-cv-1179<br>) |
| LANCE SKAGGS, JOSH ALLENBAUGH, KEVIN SLAVENS, JOHN WILLIAMS, PAUL SEGROVES, ERIN BARISCH, and DOES 1-10, | )<br>)<br>)<br>)<br>) |
| Defendants. | ) |

## O P I N I O N and O R D E R

Before the Court are the Motion for Summary Judgment filed by Defendants (Doc. 80) and the Motion to Strike filed by Plaintiffs (Doc. 103). For the reasons set forth below, the Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART and the Motion to Strike is DENIED.[1]

### INTRODUCTION

Around 4:00 a.m. on July 10, 2005, Plaintiff, Steve Brestan (hereinafter "Steve Brestan" or Plaintiff) was arrested by Defendants on Main Street in downtown Peoria. He alleges that the arrest was made without probable cause and that the police officers who arrested him used excessive force. He claims that he suffered physical and mental trauma as a result of the arrest and beating.

---

[1] This Motion is denied because it is without merit. Defendants may include a different theory of relief in their reply brief on a claim made in their Motion for Summary Judgment. In any event for the reasons set forth in this Order, the Motion is moot.

Plaintiff's wife, Jamie Brestan, also seeks damages stemming from the incident of July 10th. She claims that she suffered a miscarriage in 2006 and loss of consortium as a result of the incident and Steve Brestan's subsequent criminal trial

## BACKGROUND

The evidence reveals that during the summer of 2005, downtown Peoria suffered from fights, loitering, and violence during the hours from midnight to early morning when the bars along Main Street closed their doors. In reaction, the Peoria Police Department assigned a number of police officers to the area to patrol and diffuse any "situation" that may develop. Defendants Lance Skaggs, Josh Allenbaugh, Kevin Slavens, John Williams, and Erin Barisch were part of that downtown task force and were on patrol during the time in question. The remaining named Defendant, Paul Segroves, was allegedly responding to a domestic disturbance call at the Holiday Inn on Hamilton Street during the relevant time period.

What occurred in the early morning of July 10, 2005 is in dispute. According to Plaintiff,[2] he was looking for a friend when he was approached by Officer Allenbaugh (or Segroves) who blocked his path. There is some testimony that Officer Allenbaugh may have mistaken Plaintiff for another person named "Big Dan." Plaintiff indicates that for no apparent reason, Officer Allenbaugh and/or Segroves or other officers pushed him, punched him, hit him in the back of his head

---

[2] Plaintiff offers changing testimony as to which of the officers initially approached him, which were involved in his arrest, and which used force. Such varying testimony does not affect the admissibility of the evidence but rather would go to Plaintiff's credibility.

and then handcuffed him. He was then hit in the face and pushed down to the pavement where his head "bounced off the pavement." He then was threatened with a taser by either Officer Segroves or Barisch and he was repeatedly hit in the head and kicked. He lost consciousness multiple times. After the beating, he was taken to a hospital where he remained handcuffed and where he was always in the presence of a police officer (in particular, Defendants Skaggs and Allenbaugh). At the hospital, the only significant injury noted was a 1 to 2 centimeter laceration above his right eye. When he was taken to the Peoria County Jail, after his hospital visit, Plaintiff complained of pain from his head, nose, ears, and stomach and asked for medical care. He was again taken to the hospital (the day after the alleged beating) where he was diagnosed with a concussion and where injuries were noted to his chest, eye, and head.

Defendants offer a different version of events. Officers Slavens and Williams, who were across the street, observed Plaintiff having "words" with Officer Allenbaugh and saw Plaintiff attempt to hit Allenbaugh. The officers went across the street to assist Officer Allenbaugh. Officer Slavens "grabbed the left side of Brestan" and Officer Williams grabbed Plaintiff's right arm and shoulder and assisted in taking him to the ground. Officer Slavens denies that anyone other than Officer Allenbaugh struck Plaintiff and denies striking Plaintiff while he was on the ground. Officer Williams indicated that Plaintiff refused to place his hands behind his back in order to be handcuffed. Officer Barisch, noticing the struggle from across the street, approached the scene in order to assist the officers. Officer

Barisch threatened to use a taser on Plaintiff if he did not comply with being handcuffed. Officer Williams stated that he forcibly handcuffed Plaintiff but that he did not strike Plaintiff. Officer Skaggs indicated that while he observed Officer Allenbaugh attempt to arrest Plaintiff, he was not involved in the altercation with Plaintiff. Officer Segroves also was not involved in the altercation and only saw Plaintiff when he was placed in the ambulance. Defendants also have presented evidence that Plaintiff did not complain of pain, injuries, or a loss of consciousness at the scene or at the hospital on the day of the arrest.

Defendants seek full or partial summary judgment for various reasons on Plaintiff's false arrest and excessive force claims. Defendants also seek summary judgment on Jamie Breston's loss of consortium claim. Additional relevant facts from other witnesses will be identified *infra*.

## STANDARD

Summary judgment should be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the responsibility of informing the Court as to portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by demonstrating "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

4

Once the movant has met its burden, to survive summary judgment the "nonmovant must show through specific evidence that a triable issue of fact remains on issues on which [s]he bears the burden of proof at trial." *Warsco v. Preferred Tech. Group*, 258 F.3d 557, 563 (7th Cir. 2001); *See also Celotex Corp.*, 477 U.S. at 322-24. "The nonmovant may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; it must go beyond the pleadings and support its contentions with proper documentary evidence." *Chemsource, Inc. v. Hub Group, Inc.*, 106 F.3d 1358, 1361 (7th Cir. 1997).

This Court must nonetheless "view the record and all inferences drawn from it in the light most favorable to the [non-moving party]." *Holland v. Jefferson Nat. Life Ins. Co.*, 883 F.2d 1307, 1312 (7th Cir. 1989). In doing so, this Court is not "required to draw every conceivable inference from the record -- only those inferences that are reasonable." *Bank Leumi Le-Isreal, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir. 1991). Therefore, if the record before the court "could not lead a rational trier of fact to find for the non-moving party," then no genuine issue of material fact exists and, the moving party is entitled to judgment as a matter of law. *McClendon v. Indiana Sugars, Inc.*, 108 F.3d 789, 796 (7th Cir. 1997) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). However, in ruling on a motion for summary judgment, the court may not weigh the evidence or resolve issues of fact; disputed facts must be left for resolution at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

## DISCUSSION

As indicated above, Steve Brestan claims that he was subjected to a false arrest and excessive force at the hands of each Defendant. In order to prevail on a title 42 U.S.C. § 1983 claim against a person in his individual capacity, Plaintiff must show that a defendant was personally involved in the constitutional deprivation. *Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003). Police officers violate the Fourth Amendment when they use excessive force in making an arrest, force that would render the seizure unreasonable. *See Graham v. Connor*, 490 U.S. 386, 393-394 (1989). Whether a seizure is reasonable requires a balancing of "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake" and is viewed from the perspective of a reasonable officer at the scene. *Id.* at 396 (quotation marks and citation omitted). "Factors to consider in making a determination of whether the amount of force used to effectuate a seizure is reasonable include the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he actively is resisting arrest or attempting to evade arrest by flight." *Estate of Escobedo v. Bender*, 600 F.3d 770, 780 (7th Cir. 2010). To make out a false arrest claim, Plaintiff must show that he was arrested without the benefit of probable cause. *McBride v. Grice*, 576 F.3d 703, 706 (7th Cir. 2009). Probable cause is present if "a reasonable person would believe, based on the facts and circumstances known at the time that a crime had been committed." *Id.* at 707.

Jamie Brestan has made claims for loss of consortium. To prevail on this separate and derivative claim, Plaintiffs must show that the actions of Defendants interfered "with the continuance of a healthy and happy marriage and injur[ed] [] the conjugal relation." *Monroe v. Trinity Hospital-Advocate*, 803 N.E.2d 1002, 1005 (Ill. App. Ct. 2003).

Each of Defendants' arguments will be taken in turn.

I.   **Liability as to Defendant Skaggs**

Defendants first argue that there is no evidence that Defendant Skaggs was involved in Plaintiff's arrest or that he employed excessive force. In this case, Plaintiff must show that Defendant Skaggs was personally involved in his arrest and/or in the use of excessive force. Skaggs himself indicated that he was not involved in the arrest and that he did not hit Plaintiff. Plaintiff has presented the declaration of Michael Linwood who was a bouncer at the Tonic Bar on Main Street during the early morning in question. Linwood states that he knew Officer Skaggs on sight because of his work at the bar over the years. He indicates that after Officer Segroves initially approached Plaintiff and stopped him, he "saw Officer Skaggs quickly take two or three steps over to Mr. Brestan and punch him in the side of the head" after Plaintiff raised his hands up in the air in apparent surrender. (Michael Linwood Declaration, Doc. 100, ¶¶ 7-8). After which, Linwood declares, Officer Skaggs and Officer Segroves were observed arresting Plaintiff and pushing him forward, causing his head to bounce on the pavement. (Linwood Dec.

¶¶ 9, 12). Linwood further stated that Plaintiff appeared unconscious as Officer Skaggs kicked him in the head and side. (Linwood Dec. ¶¶ 18-19).[3]

While Linwood's observations that evening are different from Plaintiff's recollection and Officer Skaggs' recollection, his testimony is competent evidence of Officer Skaggs' involvement in Plaintiff's arrest and in the apparent use of force. Therefore there is a genuine issue of material fact as to whether Officer Skaggs was involved in Plaintiff's arrest and whether his use of force was reasonable such that summary judgment cannot be granted on those claims.

## II. Qualified Immunity with respect to Defendants Barisch, Slavens, and Williams

Qualified immunity must be determined at the earliest possible time in a lawsuit because it is immunity from suit rather than a defense to liability. *Saucier v. Katz*, 533 U.S. 194, 200-201 (2001). In order to determine whether Defendants Barisch, Slavens, and Williams are entitled to qualified immunity, the Court must first ask: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Id.* at 201. At the summary judgment stage, the Seventh Circuit Court of Appeals, in repeating this first question, held that "[f]irst, the plaintiff must present evidence that, taken in the light most favorable to the plaintiff, would allow a reasonable fact finder to determine that he has been deprived of a constitutional right." *Washington v.*

---

[3] Linwood's declaration is internally inconsistent, stating that Skaggs was both involved in the initial arrest and that he was "partway down the block" and had to "run over" after Plaintiff was already handcuffed. Such inconsistency would go to the credibility of his statements.

*Haupert*, 481 F.3d 543, 547 (7th Cir. 2007); *See also Mannoia v. Farrow*, 476 F.3d 453, 457 (7th Cir. 2007) ("Although the privilege of qualified immunity is a defense, Plaintiff carries the burden of defeating it."). If Plaintiff has been deprived of a constitutional right, the Court must then ask whether the right was clearly established "in light of the specific context of the case." Saucier, 533 U.S. at 201. As the Supreme Court explains:

> For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent. Hope v. Pelzer, 536 U.S. 730, 739 (2002) (internal citations and quotation marks omitted).

Analysis of this claim is hampered by the wildly different and contradictory testimony and evidence presented to the Court. In particular, Plaintiff has failed to offer a coherent statement of the facts that would allow this Court to understand exactly what testimony or evidence he is relying on and what actions he alleges each of Defendants engaged in. Plaintiff mostly offers vague references to "officers," inappropriately relies on statements made in the Complaint in order to rebut statements of fact, and otherwise relies on evidence that contradicts other evidence he himself relies on. As such, it is near impossible for the Court to actually determine what Plaintiff's version of events exactly are.

From what the Court can cobble together, the facts, taken in a light most favorable to Plaintiff, reveal that he was initially stopped by either Allenbaugh (who himself confirms that he initially stopped Plaintiff) or Segroves (which is what

9

Linwood indicates) for no apparent reason. One of these officers then told him to leave the area and as Plaintiff walked away, the Officer blocked his path. He was then pushed and punched and hit by "officers" (apparently for no reason). "Officers" then handcuffed him.[4] Evidence from both sides indicates that Skaggs, Segroves, Williams and Slavens were involved in his arrest. He was then pushed to the ground and kicked and punched by these officers (or in their presence) while prone and unconscious. According to Defendants, Williams and Slavens were involved in actually handcuffing Plaintiff (after they observed Plaintiff swing at Allenbaugh in an attempt to hit him) but did not strike Plaintiff, and Barisch threatened to deploy his taser in order to subdue Plaintiff (who was unruly and resisting the handcuffing). The testimony would reveal that these officers only approached the scene after hearing and seeing a verbal exchange[5] and after either Allenbaugh or Segrove made physical contact with Plaintiff. Either way, Barisch, Williams, and Slavens were eventually involved in restraining Plaintiff through the use of physical force or threatened force.

Defendants argue that based on their version of facts, Barisch, Williams, and Slavens, at most, were assisting in the arrest of Plaintiff, that probable cause

---

[4] In Plaintiff's statement of additional material facts he states that "According to the officers, Williams, Allenbaugh, and Slavens all handcuffed Brestan" but offers no citation to the evidenced to support this fact.

[5] The Court would note that "[i]t is well settled under Illinois law – and was well settled at the time of [plaintiff's] arrest [] that the resistance must be physical; mere argument will not suffice" to support an arrest for obstructing a police officer. *Payne v. Pauley*, 337 F.3d 767, 767 (7th Cir 2003). The initial officer's verbal altercation with Plaintiff, then, would not justify an arrest for obstruction.

existed for Plaintiff's arrest, and that the actual or arguable probable cause of the initial officer (Allenbaugh or Segroves) can be imputed to them. Moreover, these officers assert that because they did not physically assault Plaintiff, they are entitled to qualified immunity. However, in a light most favorable to Plaintiff the evidence reveals that Plaintiff was accosted and handcuffed for no apparent reason and that he was beaten while handcuffed and unconscious, again for no apparent reason.

> The Supreme Court has long held that:
>
> No right is held more sacred, or is more carefully guarded by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law. *Union Pac. R. Co. v. Botsford*, 141 U.S. 250, 251 (1891).

In light of this right, it has also long been held that a police officers seizes a person when the "officer accosts an individual and restrains his freedom to walk away." *Terry v. Ohio*, 392 U.S. 1, 16 (1968). Such a seizure can only occur if the police officer has a reasonable suspicion that a crime is afoot. *Id* at 21-22. In order to establish such a reasonable suspicion, the police officer must point to "specific and articulable facts that suggest criminality so that he is not basing his actions on a mere hunch." *United States v. Booker*, 579 F.3d 835, 838 (7th Cir. 2009).

If Plaintiffs version is credited, which the Court must do at this stage, he was told to leave the area and attempted to comply. The officer, however, blocked his path and then hit him for no reason. The Court can find no statutory or other authority that would justify such action on the part of the officer who initially

approached Plaintiff. These facts do not support the reasonable suspicion of any crime. If this is what the other officers observed when they came over to arrest Plaintiff, the Court can also not find any statutory or other authority to support their arrest of Plaintiff. Arguably, the initial officer had the authority to order Plaintiff to leave the area. It was early in the morning, the bars were closing, and there was no reason to allow persons to loiter on streets during a time when violence may occur. However, when Plaintiff was in fact leaving the area, the Court does not see how the officer could have any justification, reasonable or otherwise, to block his path and restrain his movement. In light of this conclusion, the Defendants asserting qualified immunity cannot rely of the initial officers reasonable suspicion or probable cause (because there was none) to support their actions. The facts, taken in a light most favorable to Plaintiff, reveal that the officers violated his right to be free from an unreasonable seizure There can also be no serious argument that this right was not clearly established at the time of the violation.

This conclusion also means that the officers are not entitled to qualified immunity on the excessive force claim either. There is evidence that these officers, at least Barisch and Slavens, were involved in beating and kicking Plaintiff while he was handcuffed and unconscious and that Williams was present when these actions were taking place and failed to intervene. It is well established that a police officer uses unreasonable force if "judging from the totality of circumstances at the time of the arrest, the officer used greater force than was reasonably

necessary to make the arrest." *Lester v. City of Chicago*, 830F.2d 706 (7th Cir. 1987). Based on Plaintiff's version of events, a factfinder could easily find that the officers violated Plaintiff's constitutional rights. Such a right was also clearly established, the officers may not beat and kick a suspect who is already subdued and not resisting. *See Gonzalez v. City of Elgin*, 578 F.3d 526, 541 (7th Cir. 2009); *Abdullahi v. City of Madison*, 423 F.3d 763, 775 (7th Cir. 2005). Moreover, a police officer has a "duty to intervene to prevent a false arrest or the use of excessive force if the officer is informed of the facts that establish a constitutional violation and has the ability to prevent it." *Morfin v. City of East Chicago*, 349 F.3d 989, 1001 (7th Cir. 2003); *See Montano v. City of Chicago*, 535 F.3d 558, 569-570 (7th Cir. 2008). Again, if Plaintiff's version of events is credited, Officer Williams violated this right by failing to intervene. *See Abdullahi*, 423 F.3d at 775. Such a right was clearly established at the time of the injury. *Id.* These officers are therefore not entitled to qualified immunity on either the false arrest or the excessive force claims at this time.

### III. Evidence regarding Plaintiff's injuries

Defendants next argue that there are no damages available to Plaintiff because he cannot show any actual injury, beyond the laceration above the right eye and the temporary swelling of his right eye, causally related to the alleged constitutional violation. The undisputed evidence reveals that immediately after Plaintiff was arrested he was examined by Justin Flick, an emergency medical technician. (Defendants' Statement of Material Facts (DSMF) ¶ 99) At that time,

Flick recounted that Plaintiff's main complaint was a laceration over his right eye, that Plaintiff stated that had not lost consciousness, and that he (Flick) did not observe other injuries (DSMF ¶¶99-102). At the hospital, Plaintiff was examined by Dr. Mari Baker who diagnosed him as suffering from alcohol intoxication and who noted the laceration, no pain complaints, nor any other injury (DSMF ¶108, 110, 111). Dr Baker, as an expert, denied that Plaintiff suffered from any blunt chest wall trauma or head trauma (other than the laceration) (DSMF ¶¶ 116). Dr. Richard Frederick, who also treated Plaintiff, stated that his discharge noted no chest wall trauma or abdominal trauma (DSMF ¶ 125). Dr. Karen Dyle, who offered an opinion as to Plaintiff's mental condition, indicated that his mental and health conditions predated his arrest on July 10th and did not arise from that encounter and that his marital relationship was dysfunctional prior to that date (DSMF ¶ 131-132).

Evidence presented by Plaintiff reveals that during the alleged beating, he "lost consciousness multiple times" and believed that "he was going to die" (Plaintiffs' Statement of Additional Material Facts (PSAMF) ¶ 20-21). He further states that during the examination by the EMT and at the hospital, he was always accompanied by an officer (PSAMF ¶27). When he arrived at the jail, Plaintiff testified that he urinated blood, that he had a lump on the back of his head, that he had drainage from his ears, that he vomited, and that he complained of pain on his head, nose, ears, and stomach (PSAMF ¶¶ 32-34). On July 11, 2005, he was again

14

taken to the hospital where he was diagnosed with a closed head injury, a contusion to the eye, a concussion, and chest trauma (PSAMF ¶¶ 36, 39, 43).

Defendants' main argument is that there is no evidence directly linking Plaintiff's injuries, as found on July 11, to the events of July 10. Defendant has certainly provided evidence from which a jury could conclude that the injuries noted on July 11 may have had nothing to do with the incident on July 10 primarily because Plaintiff did not complaint of such injuries on that day. Ultimately, however, it is the jury's province to determine whether the injuries complained of were proximately caused by the actions of Defendants. *See e.g. McAllister v. Price*, ___F.3d ___, 2010 wl 3169326 (7th Cir. 2010). A reasonable jury could easily find, based upon the timeline alone and lack of an apparent intervening cause, that injuries that developed within one day of the alleged excessive force would be directly attributable to Defendants' actions. A jury could also base its decision on circumstantial evidence, Plaintiff's (and his witnesses') description of the alleged beating, Plaintiff's description of his own physical state (i.e. that he lost consciousness), and Plaintiff's own complaints of pain and injury after the incident. The Court further notes that Defendants' own expert indicated that it is not unusual for a person who undergoes trauma to not feel the effects immediately and to note the negative effects of the trauma the next day. (Richard Frederick Dep. p. 9). Moreover, a jury could reasonably believe Plaintiff and Jamie Breston regarding their mental state and the state of the marriage prior to the incident. As such, Steve Breston's damages will not be truncated at this time.

### IV. Time-Barred claims against Defendants Barisch and Segroves

Defendants argue that because claims against these Defendants were added to this case more than 2 years after the July 10, 2005 arrest, the claims are time-barred. Plaintiff's false arrest and excessive force claims accrued at the time of his arrest and are subject to a two year limitations period. *Brooks v. City of Chicago*, 564 F.3d 830, 832 (7th Cir. 2009). The original complaint was filed on July 6, 2007, only a few days prior to the expiration of the limitations period, and did not name Defendants Barisch and Segroves but did include John Does 1-10. Plaintiffs filed an Amended Complaint on April 8, 2008 after the limitations period expired (Doc. 19). In this Amended Complaint, Plaintiffs did name Barisch and Segroves as Defendants. In their Answer (Doc. 33) Defendants raised only a qualified immunity defense (besides denying the substantive allegations in the Amended Complaint). Defendants sought to amend their Answer on December 1, 2008 to add a lack of standing and capacity affirmative defenses (Plaintiffs had filed for bankruptcy after filing the original Complaint) (Doc. 56). That Motion was denied by Magistrate Judge Gorman on January 6, 2009 (Judge Gorman ordered the Clerk to designate Plaintiffs as "debtors in possession"). There is no indication in the record that these Defendants ever sought to include a statute of limitations defense in any pleading.

A statute of limitations defense is an affirmative defense that must be set forth in a response to a pleading. FED.R.CIV.P. 8(c)(1). Defendants waived this defense by failing to raise it in either their Answer or other responsive pleading.

*See Williams v. Lampe*, 399 F.3d 867, 871 (7th Cir. 2005); *In re Kontrick*, 295 F.3d 724, 735 (7th Cir. 2002). Defendants also have not sought to amend their Answer in order to assert such a defense. *See Williams*, 399 F.3d at 871. Instead, Defendants offer arguments related to Rule 15(c)'s relation back provision in an attempt to, presumably, show that the Complaint was improperly amended. Any such Rule 15 arguments should have been made when Plaintiffs attempted to amend their Complaint, or at least prior to the filing of an Answer in a motion to dismiss or for summary judgment. Defendants did neither.[6] In addition any arguments that Defendants now make related to Plaintiffs' designation as "debtors in possession" could have and should have been raised before Judge Gorman last year. Defendants' arguments with respect to the statute of limitations defense are without merit.

## V. Plaintiff's damages related to continued prosecution

Defendants point out that Plaintiff seeks damages for "Defendants' continued use of force and prosecution for nearly two years" but has not made out a claim for malicious prosecution. Defendants pray for judgment with respect to any malicious

---

[6] While certainly these Defendants cannot be held to task for failing to respond to the Motion to Amend (even though they are represented by the same counsel as other Defendants) they have offered no excuse as to why they failed to include this defense in their Answer or in a responsive pleading. In addition, Defendants offer no convincing case authority that would suggest that affirmative defenses raised by unrelated Defendants on unrelated claims could be applied to them. *See Rosser v. Chrysler Corp*, 864 F.2d 1299, 1304 (7th Cir. 1988) (approving the sua sponte dismissal of nonmoving defendants where they "are in a position similar to that of moving defendants or where the claims against all the defendants are integrally related"). The dismissed Defendants were jail employees who were facing different claims. In any event, if these Defendants wished to benefit from the dismissal of these Defendants, they should have so moved in a timely manner.

prosecution claim and any damages that may flow there from. Plaintiffs have not responded to this argument. As such, this Court would grant judgment in favor of Defendants on any such malicious prosecution claim.

## VI. Jamie Breston's Loss of Consortium Claim

Defendants make four arguments with respect to this claim, that it fails as a matter of law, that she cannot recover for bodily injuries, that the claim for bodily injury lacks supporting evidence, and that she cannot recover punitive damages.

Illinois state law recognizes the derivative claim of loss of consortium. Plaintiff has therefore at least asserted, and may prosecute, a loss of consortium claim pursuant to state law. Defendants argue, however, that if the claim is based on federal law, it must fail as a matter of law. In *Neihus v. Liberio*, 973 F.2d 526 (7th Cir. 1992), the Court of Appeals had occasion to consider whether a person can recover for loss of consortium under the Constitution; that is, whether loss of consortium is a deprivation of liberty within the meaning of the due process clause. *Id.* at 532. The Court did not answer the question with a definitive yes or no. Rather, the Court declined to hold that loss of consortium is a per se deprivation of liberty. The Court went on to hold, however, that a significant claim of loss of consortium, where, for example, injury would render a spouse "a human vegetable," *may* be sufficient to state a Constitutional claim. *Id.* at 534. *Neihus* did not recognize a Constitutional claims for loss of consortium; and, even if the case can be construed as opening the door to such a claim, Plaintiff certainly has not reached the level of incapacitation that the Seventh Circuit offered as an example.

Moreover, this Court shares the Seventh Circuit's concluding remark that labeling such a claim a state law claim or a Constitutional claim is "largely an academic" endeavor. There is no showing that the labeling of the claim would render the elements different or that it would change the type of damages Plaintiff may recover. Therefore, Defendants are granted judgment to the extent that Plaintiff is attempting to assert a Constitutional claim for loss of consortium. Judgment is not granted with respect to Plaintiff's state law claim of loss of consortium.

Defendants next argue that Plaintiffs may not recover punitive damages or damages related to bodily injuries (or alternatively that Plaintiff has presented no competent proof of such injuries). Plaintiffs concede that they may not seek punitive damages on this loss of consortium claim. Plaintiffs also state that they are not seeking damages for bodily injuries but rather for the mental distress that in turn caused certain events such as a miscarriage, an inability to breastfeed, and panic attacks. A loss of consortium claim "evolves out of the marital relationship and the rights arising from that relationship" and the "basis for recovery . . . is interference with the continuance of a healthy and happy marriage and injury to the conjugal relation. *Monroe*, 803 N.E.2d at 1005. Thus, Plaintiffs may claim as damages not only the loss of financial support and services, but also loss of "companionship, felicity, and sexual intercourse." *Kubian v. Alexian Bros. Medical Center*, 651 N.E.2d 231, 236 (Ill. App. Ct. 1995). Certainly, Jamie Breston's "stress" can be an indicator of loss of happiness or companionship in her married life; however, Plaintiffs have pointed to no authority that she can recover for any

physical loss she may have suffered or any general emotional suffering she endured as a result of Defendants' actions. Jamie Breston's damages are limited to the items listed above and only to the extent that they are related to her marital status. Defendants are granted judgment to the extent that she is claiming damages for any bodily injury or for any emotional distress (unrelated to her marriage).

## CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment filed by Defendants (Doc. 80) is GRANTED IN PART and DENIED IN PART and the Motion to Strike filed by Plaintiffs (Doc. 103) is DENIED. The Motion for Summary Judgment is GRANTED only with respect to damages for any malicious prosecution claim Plaintiff may be asserting, for any Constitutional claim for loss of consortium, for those claims for damages that are not supported by state law regarding loss of consortium claims, and on Jamie Breston's claims for punitive damages. In all other respects, the Motion is DENIED.

This matter is SET for a telephonic conference on 9/30/10 @ 10:30 AM (CST) to discuss the timing of the Final Pretrial Conference and Trial in this matter.

In addition, Plaintiffs shall SHOW CAUSE by September 30, 2010 why Does 1-10 may not be dismissed from this action.


Entered this 21 day of September, 2010

                                              /s/ JB McDade
                                           JOE BILLY MCDADE
                                    United States Senior District Judge